**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 23-142-DLB-CJS**

**ESTATE OF DAVID POE**                                                  **PLAINTIFF**

**v.**                          **MEMORANDUM OPINION AND ORDER**

**FURQUAN MAJEED, et al.**                                              **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**I.      INTRODUCTION**

This matter is before the Court on the Motion for Summary Judgment by Defendants Furquan Majeed and Horizon Midwest, Inc. (Doc. # 86) and the Motion for Leave to Amend Expert Witness Disclosures by Plaintiff Kyle Windell Poe, on behalf of the Estate of David Poe (Doc. # 81).  Both Motions having been fully briefed, the matter is ripe for the Court's review.  For the following reasons, Defendants' Motion (Doc. # 86) is **granted in part** and **denied in part** and Plaintiff's Motion (Doc. # 81) is **denied**.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

This case is about a tragic workplace accident on September 28, 2022 that resulted in the death of David Poe.  At the time of his death, Poe was a fifty-eight-year-old dock worker who worked for GXO Logistics at the Diversey facility ("the Facility") in Florence, Kentucky.  (Doc. # 90 at 4).  His estate, through administrator Kyle Windell Poe, brought this suit against Defendants Furquan Majeed and Horizon Midwest, Inc. ("Horizon").  Defendant Majeed is a resident of Ohio who works as a commercial truck driver and is an independent contractor with Horizon.  (Doc. # 86-2 at 3:10–13, 4:1–6).

1

Defendant Horizon is an Ohio corporation with its principal place of business in Cleveland, Ohio.  (Doc. # 1 ¶ 12).  Horizon is a regulated motor carrier that operates commercial motor vehicles in interstate commerce.  (Doc. # 86-1 at 6).  -

Majeed arrived at the Facility on September 28, 2022 around the time David Poe was finishing his daily shift.  (Doc. # 86-2 at 8:15–9:2; Doc. # 28-2 at 4).  Majeed received his loading dock assignment and proceeded to dock sixty-nine (69) to have his trailer loaded.  (Doc. # 86-2 at 8:15–9:21).  In keeping with GXO policies, Majeed backed up to the dock and dropped his trailer for it to be connected to the dock.  (Id.).  He then exited his truck, unhooked it from the trailer, got back in his truck, and moved it four or five feet away from the unhooked container, pursuant to GXO policies.  (Id.).  From there, he put his truck in park and waited for his trailer to be loaded.  (Id.).  He was instructed to stay in his truck until he saw a green light on GXO's dock-light system[1], at which point he could reconnect his trailer and leave.  (Id. at 6:11–16).

Majeed waited in the cab of his truck for approximately forty (40) minutes before the dock-light system turned from red to green.  (Id. at 13:22–10).  Once he saw the light had changed to green, Majeed backed his truck up four or five feet to reconnect to his trailer.  (Id. at 12:7–25).  Majeed said that he felt resistance and did not hear the clicking sound of the trailer attaching to the truck when he first tried backing into the trailer, which he described as "normal that in first attempt you sometimes don't get it latched[.]"  (Id. at 15:3–10, 16:23–17:5).  Because he had not heard the clicking sound, Majeed started the

---

[1]     The dock-light system is how GXO and its employees communicate with truck drivers that are loading and unloading trailers.  (See Doc. # 86 at 4–6).  The concept is simple—when the light is red, the driver is not to pull away from the dock or reconnect their truck to the trailer.  (Doc. # 86-3 at 18:3–19).  Conversely, when the light turns green, the driver may reattach their trailer and leave the dock.  (Doc. # 86-2 at 5:7–17).  Drivers can see the lights from the cabs of their trucks by looking in the truck's mirrors.  (Doc. # 86-3 at 24:23–25:22).

process over. (*Id.* at 16:7–9). He felt the same resistance on his second attempt, so he got out of the truck to see what was causing the issues. (*Id.* at 18:3–8). Upon exiting the truck, he discovered a person lying under the trailer. (*Id.* at 18:11–21). The person was David Poe.

Sergeant Charles Duncan investigated the accident shortly after it happened. (Doc. # 86-3 at 4:5–15). Sergeant Duncan is a member of the Kenton County Police Department's Serious Traffic Accident Reconstruction ("STAR") Unit, which is a unit dedicated to investigating and reconstructing motor vehicle accidents in Northern Kentucky. (*Id.* at 7:3–25). When Sergeant Duncan arrived at the facility, he "observed Mr. Poe's body and then was able to observe his head," and from that, Sergeant Duncan concluded Mr. Poe had been decapitated. (*Id.* at 8:3–20). He found the green light of the dock-light system on, and witnesses confirmed to Sergeant Duncan that the light was green prior to his arrival. (*Id.* at 9:15–23).

Sergeant Duncan spoke to Majeed within an hour of arriving at the facility. (*Id.* at 10:13–19). In their conversation, Majeed told Sergeant Duncan what had happened with his truck, recounted *supra*. (*Id.* at 11:5–12:23). Based on Majeed's account of the accident and a review of GXO's policies and practices, Sergeant Duncan concluded that Majeed complied with GXO's policy of disconnecting the truck from the trailer before pulling four-to-five feet from the trailer and that Majeed acted in accordance with industry standards. (*Id.* at 13:12–16, 17:5–20). He found that Majeed did not have alcohol or drugs in his system at the time of the accident. (*Id.* at 10:20–11:4).

Sergeant Duncan also gathered information on Poe's job and its requirements and responsibilities. He concluded that Poe served as a "dockworker" which made him

3

responsible for loading and unloading the trailers. (*Id*. at 15:5–14). He found that dockworkers are responsible for manually engaging a device that attaches the truck to the loading dock, a job that usually requires two people. (*Id*. at 16:3–22). He found that dockworkers are responsible for flipping the switch that turns the dock light from red to green, which requires the dockworker to move from outside with the trailer to inside the Facility. (*Id*. at 18:3–19). Witnesses told Sergeant Duncan that they believed Poe, alone, flipped the dock-light switch and attempted to unhook the trailer from the dock by unlocking the glad lock hands.[2] (*Id*. at 21:6–25, 22:4–25). Based on the scene, Sergeant Duncan concluded that Majeed "backed his trailer 4 to 5 feet to engage the fifth wheel [of the trailer], crushing Mr. Poe as he was removing the glad lock hand." (*Id*. at 23:4–10). He further concluded that no criminal activity was involved in the accident and that Mr. Poe's "failure to follow established training and procedures" was the cause of the accident. (*Id*. at 23:20–24).

Poe's estate, through its administrator Kyle Poe, filed its Complaint in Boone County Circuit Court on September 26, 2023. (Doc. # 1-1). In the Complaint, Poe alleged four counts: (1) ordinary negligence, gross negligence, and negligence *per se* against Defendant Majeed, (2) ordinary negligence, gross negligence, negligent hiring, training, supervising, and retention, negligence *per se*, and vicarious liability against Defendant Horizon Midwest, Inc., (3) wrongful death under Kentucky Revised Statute § 411.130

---

[2] Glad hand locks are security devices designed to effectively immobilize a trailer and prevent movement. *See* TRAILER GLAD HAND LOCKS: ENHANCING SECURITY, SAFETY, https://dickeymfg.northparkgroup.com/trailer-glad-hand-locks/ (last visited August 6, 2026). Sergeant Duncan testified that in the facility's setting, these were used to hook the air hoses up to the dock. (Doc. # 86-3 at 22:12–19).

against both Defendants, and (4) the subrogated interest of Sedgwick CMS, Inc. to the proceeds of the litigation. [3] (*Id.* at 8–14).

On October 17, 2023, Defendants removed the case to this Court (Doc. # 1) and filed a Motion for Partial Dismissal (Doc. # 6). Specifically, Defendants sought to dismiss Poe's claims of negligence *per se*, negligent hiring, training, supervising and retention, and gross negligence and subsequent claim to punitive damages. (*See* Doc. # 6). After fully briefing the Motion, the Court issued its Memorandum Opinion and Order on February 21, 2024. (Doc. # 10). The Court granted Defendants' Motion as to the negligence *per se* and gross negligence/punitive damages claims. (Id. at 4). It denied the Motion as moot as to the negligent hiring, training, supervising and retention claims because Poe withdrew those claims. (Doc. # 10 at 4–5). Defendants filed their Answer on March 14, 2024.[4] (Doc. # 13).

The parties then engaged in considerable discovery for nearly two years. Then, on March 18, 2026— two days after the expert witness deadline passed and all discovery closed—Poe filed the instant Motion for Leave to Amend Expert Witness Disclosures (Doc. # 81), wherein he seeks to designate a rebuttal witness to Defendants' expert. Less

---

[3]     Poe also named Sedgwick CMS, Inc. as a Defendant in this case. (See Doc. # 1-1). However, Poe voluntarily dismissed his claims against Sedgwick on February 23, 2024. (Doc. # 12).

[4]     On May 29, 2024, Defendants filed a Motion for Leave to File a Third-Party Complaint against GXO Logistics Supply Chain, Inc. and GXO Logistics Worldwide, LLC (collectively, "GXO"). (Doc. # 26). Magistrate Judge Candace J. Smith granted Defendants' motion on October 31, 2024 (Doc. # 36), and the Third-Party Complaint was filed into the record the same day. (Doc. # 37). GXO filed a Motion to Dismiss the Third-Pary Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 20, 2024 (Doc. # 46). A little over a month later, Defendants filed a Proposed Order of Dismissal against GXO (Doc. # 54), which this Court granted on February 19, 2025. (Doc. # 58).

than a month later, Defendants filed the instant Motion for Summary Judgment. (Doc. # 86). Both Motions having been fully briefed, the matter is ripe for the Court's review.

## III.    ANALYSIS

The Court will address the parties' motions in turn. Because the outcome of Defendants' Motion will directly impact the Court's analysis of Poe's Motion, the Court will begin its analysis with Defendants' Motion for Summary Judgment.

### A.    Defendants' Motion for Summary Judgment

Federal Rule of Civil Procedure 56 allows for the granting of summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party or parties bear the burden of showing an absence of a genuine issue of material fact. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). A genuine dispute as to a material fact exits where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. At this stage, the Court must not weigh evidence or make credibility determinations but instead must ascertain whether there is a genuine issue for trial. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting *Anderson*, 477 U.S. at 249). In making this determination, the Court is not required to "search the entire record to establish that it is

6

bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

Defendants move for summary judgment on Poe's two remaining claims—negligence by both Majeed and Horizon under Kentucky law and wrongful death in violation of Kentucky Revised Statute § 411.130. Further, Defendants maintain that Poe's case-in-chief fails even if he is allowed to call a rebuttal expert. The Court will address each of Defendants' arguments in turn.

### 1.    *Negligence*

A claim of negligence under Kentucky law requires a plaintiff to show (1) the defendant owed the plaintiff a duty of care; (2) a breach of that duty by the defendant; (3) causation that links defendant's breach to plaintiff's injuries; and (4) damages resulting from the breach. *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003)). "The element of duty is a question of law for the court to decide, breach and injury are questions of fact for the jury to decide, and causation is a mixed question of law and fact." *Simons v. Strong*, 978 F. Supp. 2d 779, 783 (E.D. Ky. 2013) (citing *Pathways, Inc.*, 113 S.W.3d at 89).

Defendants maintain there is a "complete absence of evidence as to Defendants' alleged negligence." (Doc. # 86 at 13). They allege that Poe has not disclosed or provided any witnesses to dispute the fact that the dock light was green at the time of the accident, and as such, Majeed's testimony that the light was green is unrefuted. (*Id.*). Further, Defendants state that because Poe has not identified an expert on liability, there

7

is no evidence that Majeed could have or should have done something different to avoid the accident.  (*Id*.).  And because Defendants' expert, Kevin Galbreath, opined that Majeed adhered to both GXO's policies and procedures and industry standards throughout, Defendants contend that Majeed adhered to the unrebutted standard of care, such that his behavior was not negligent.  (*Id*.).

Poe responds by pointing out a number of Majeed's statements from his deposition testimony that Poe claims create genuine issues of material facts.  (Doc. # 90 at 8).  On the element of duty, Poe claims that Majeed owed dockworkers and people in the vicinity of his truck "a duty of ordinary care in the operation of [his truck]."  (*Id*.).  Poe further claims that a reasonable jury could conclude that Majeed breached that duty because he (1) knew there was a blind spot under his truck's fifth wheel, (2) knew there were dockworkers present and working in the loading area, (3) only checked his mirrors for the green dock light as a pre-back safety check, and (4) did not exit the truck and check under his fifth wheel after experiencing resistance and before attempting to reconnect his truck a second time.  (*Id*.).  Poe claims that the jury should be able to evaluate all these facts to determine whether Majeed breached his duty.  (*Id*. at 9).

The Court begins its analysis with the duty element.  "For a common law negligence claim, the standard of care is that of the ordinary care that a reasonably prudent person would exercise under the circumstances."  *Simons*, 978 F. Supp. 2d at 784.  "Under the universal duty of care, 'every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury.'"  *James v. Meow Media, Inc.*, 300 F.3d 683, 690 (6th Cir. 2002) (citing *Grayson Fraternal Order of Eagles v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987)).  This has been interpreted as a

8

"circumstantially limited" duty to "exercise ordinary care to prevent *foreseeable* harm." *Id*. (emphasis in original). In this situation, it is clear Majeed had a duty to exercise ordinary care in the operation of his truck, specifically so people do not get seriously hurt. Neither Defendants' Motion nor their Reply contains an argument that Majeed did not have a duty of care when operating his truck. (*See generally* Docs. # 86 and 92).

The parties' primary dispute is whether Majeed breached his duty of care. Defendants argue he did not commit breach because he operated his truck in accordance with GXO's policies and industry standards. (Doc. # 86 at 13–14). Defendants lean on Sergeant Duncan's findings that Majeed "bears no responsibility for the accident" from a criminal standpoint. (*Id*. at 13). Further, Defendants argue that their expert's conclusion that Majeed complied with GXO and industry standards is unrebutted, and that Poe has not shown that Majeed could have or should have acted differently. (*Id*. at 13–14).

Poe, for his part, argues that the facts from Majeed's testimony—listed *supra*— give rise to a series of material fact questions that are "precisely the kind of question[s] that fall[ ] within the common experience of a jury." (Doc. # 90 at 9). Further, he avers that Defendants' expert's conclusion about the industry standard is not indicative of the safeness of an industry's practice and is "rebuttal-caliber evidence for the jury" that does not entitle Defendants to summary judgment. (*Id*.). He claims that "[a]n entire industry can be negligent if its custom falls below what ordinary prudence requires." (*Id*.). Finally, Poe contends that David Poe's alleged comparative fault does not eliminate Defendants' liability, such that it is a question for the jury. (*Id*. at 9–10).

The question for the Court, then, is whether Majeed's actions constituted a breach of the ordinary duty of care in the trucking industry outlined by Defendants' expert. This

9

question is better left for a jury.  As established by Kentucky law, breach of duty is a question of fact for the jury to find, and based on Majeed's testimony, there is still a question as to whether Majeed breached his duty of care owed to Poe.  Specifically, a reasonable juror could find that Majeed should have taken additional precautions—e.g., better addressing the blind spot in his truck or called on other employees to assist him—to ensure the safety of dockworkers like Poe.  And while the Court recognizes that Defendants have an expert to present his theory and other evidence that suggests Poe's fault means that Majeed did not breach his duty, this kind of "conflicting testimony and theories 'present[s] a sufficient disagreement to require submission to a jury.'"  *Short v. Marvin Keller Trucking, Inc.*, 570 F. Supp. 3d 459, 465 (E.D. Ky. 2021) (citing *Anderson*, 477 U.S. at 251–52).  Accordingly, because the Court finds that there is a genuine issue of material fact as to the element of breach, Defendants' Motion must be **denied** as to Poe's negligence claim.

### 2.    *Kentucky's Wrongful Death Statute*

Defendants next move for summary judgment on Poe's claims under Kentucky's wrongful death statute.  Kentucky's wrongful death statute provides that

> Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the person who caused it, or whose agent or servant caused it. If the act was willful or the negligence gross, punitive damages may be recovered. The action shall be prosecuted by the personal representative of the deceased.

KY. REV. STAT. § 411.130(1).  Kentucky courts have found that damages in a wrongful death action are measured by "the value of the destruction of the power of the decedent to earn money."  *Meinhart v. Campbell*, No. CIV.A. 307CV465-H, 2009 WL 4508579, at * 1 (W.D. Ky. Dec. 1, 2009) (quoting *Adams v. Davis*, 578 S.W.2d 899, 902 (Ky. Ct. App.

10

1979)).  In this sense, Kentucky's statute is a "true" wrongful death statute because it measures the damages amounts by the loss to the decedent's estate.  *Savage v. Co-Part of Conn., Inc.*, 671 S.W.3d 48, 65 (Ky. 2023) (quoting *Empire Metal Corp. v. Wohlwender*, 445 S.W.2d 685, 687 (Ky. 1969)).  Relevant to this case, a plaintiff may also recover damages for pain suffering under the wrongful death statute, but those damages are not presumed and must be proven.  *See Louisville SW Hotel, LLC v. Lindsey*, 636 S.W.3d 508, 518 (Ky. 2021).  Indeed, "[a] party seeking damages must establish by 'substantial evidence' that pain and suffering occurred."  *Lindsey*, 636 S.W.3d at 518 (citing *Worldwide Equip., Inc. v. Mullins*, 11 S.W.3d 50, 61 (Ky. Ct. App. 1999)).  Kentucky law allows for pain and suffering damages "if the injured person was partly conscious, had intervals of consciousness, or was conscious for a short time before death."  *Vitale v. Henchey*, 24 S.W.3d 651, 659 (Ky. 2000).

Defendants launch two attacks on Poe's wrongful death claims.  First, they aver that Poe has not provided adequate evidence to show pain and suffering.  (Doc. # 86 at 16).  Further, they state that Poe has not developed proof to establish the destruction of David Poe's power to labor and earn money.  (*Id.*).  They claim that Poe's only damages are limited to funeral costs, such that his claims of damages for pain and suffering and power to earn income should be dismissed.  (*Id.* at 17).

Poe rejects both of those arguments.  He avers that there is a genuine issue of fact as to whether David Poe was partly conscious for a short period of time before his death, such that a reasonable jury could find evidence of pain and suffering.  (Doc. # 90 at 11).  Further, Poe claims that Defendants cannot establish that David Poe suffered from a disability such that he did not have earning potential at the time he died.  (*Id.* at

11

13).  From this, he states that a jury "may draw a reasonable inference of continued earning capacity from the fact of his regular, documented employment" which would allow for damages.  (*Id*.).

First, the Court first finds that damages for pain and suffering are not recoverable in this case because Poe has not shown substantial evidence of David Poe's pain and suffering.  Poe leans on the State Medical Examiner's final diagnosis, which found that David Poe suffered "decapitation and blunt force injuries to the head and torso due to crush injury by tractor-trailer, with transection of the spinal cord, vertebrae, trachea, esophagus, and aorta." (Doc. # 90 at 11).  Based on that diagnosis and the slow-moving nature of the accident, Poe claims a jury could reasonably infer that David Poe was "conscious and experiencing pain for at least some portion of that interval before death." (*Id*. at 12).  His theory is based on unestablished speculation that David Poe survived the first encounter with the trailer before succumbing to his injuries.  (*Id*. at 11–12).  That is not the kind of substantial evidence that allows a pain and suffering claim to go forward. *See Hengel v. Buffalo Wild Wings, Inc.*, No. CIV.A. 5:11-286, 2013 WL 3970154, at *3 (E.D. Ky. July 31, 2013) (granting summary judgment for defendants where plaintiffs' sole basis for pain and suffering damages was the autopsy report).  Based on the evidence Poe presents, there is only speculation that Poe survived long enough for a jury to determine he suffered.  Kentucky law requires more.  As such, the Court will **grant** Defendants' Motion as to damages for pain and suffering.

However, the Court will deny Defendants' Motion regarding lack of earning capacity.  Kentucky law is clear and consistent that "damages flow naturally from the wrongful death of a person *unless there is evidence from which the jury could reasonably*

12

believe that the decedent possessed no power to earn money." *Turfway Park Racing Ass'n v. Griffin*, 834 S.W.2d 667, 671 (Ky. 1992) (emphasis added), *overruled in part on other grounds by Lindsey*, 636 S.W.3d 508.  This showing would include "evidence 'of a disability so profound as to render [a plaintiff] incapable of earning money . . . .'" *Reffitt v. Hajjar*, 892 S.W.2d at 599, 603 (Ky. Ct. App. 1994) (quoting *id.*).  Indeed, one way to prove earning capacity is through an expert witness report, but Kentucky law does not require it.  *Prater v. Arnett*, 648 S.W.2d 82, 86 (Ky. Ct. App. 1983).  Here, even without expert testimony to his future earning capacity, there is no evidence in the record that David Poe was disabled, such that he would not have been able to continue earning money as a dockworker.  On the contrary, Poe was gainfully employed at GXO and showed up to work continuously prior to the accident.  (*See* Doc. # 90 at 13).  Defendants do not produce any evidence that Poe would not have been able to continue his job as a dockworker in lieu of the accident.  As such, a jury will be permitted to determine what damages, if any, Poe is entitled to on his wrongful death claim.  Accordingly, Defendants' Motion is **denied** as to damages for Poe's power to labor and earn income.

### B.      Motion to Amend Expert Witness Disclosures

Having determined this case will not be dismissed on summary judgment, the Court now turns to Poe's Motion for Leave to Amend Expert Witness Disclosures, pursuant to Federal Rule of Civil Procedure 26(a)(2)(D).  In his Motion, Poe asks that the Court allow him leave to designate Dan Katt as a rebuttal expert witness to Defendants' expert Kevin Galbreath.  (Doc. # 81 at 1).  Poe also seeks to include Sergeant Charles Duncan as an expert witness in his case-in-chief.  (*Id.* at 5; Doc. # 88 at 6–7).  Poe

submitted his Motion to Amend on March 18, 2026, two days after the Court's expert discovery deadline passed.

Federal Rule of Civil Procedure 26(a)(2)(D) outlines when a party must make expert witness disclosures.  In cases where the Court does not specify when rebuttal experts should be disclosed, a party's rebuttal expert witness should be disclosed within thirty (30) days after the other party's disclosure.  FED. R. CIV. P. 26(a)(2)(D)(ii).  However, Federal Rule of Civil Procedure 37(c)(1) provides that a party is not allowed to present evidence or identify a witness that was not disclosed, unless the failure to disclose was "substantially justified or is harmless."  When determining whether a failure to disclose was substantially justified or harmless, courts in the Sixth Circuits look at five factors:

> (1) the surprise to the party against whom the evidence would be offered;
> (2) the ability of that party to cure the surprise;
> (3) the extent to which allowing the evidence would disrupt the trial;
> (4) the importance of the evidence; and
> (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).  "District courts have broad discretion in applying these factors and need not apply each one rigidly."  *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (internal citations omitted).  The Court will walk through each of the elements in turn.

First, surprise.  Poe claims this factor favors him because he provided Defendants with "contemporaneous, on-the-record notice of an anticipated rebuttal witness" within thirty days of Defendants disclosing their own expert.  (Doc. # 81 at 4).  Poe alleges he gave Defendants verbal notice of his intentions to retain a rebuttal witness—though he did not give the name of his expert or a summary of what their report would encompass—in a telephonic status conference with the Court on February 6, 2026.  (*Id.*).  Defendants

14

contend that Poe's notice was not sufficient and that his disclosure is exceedingly late, considering the Court's scheduling deadlines.  (Doc. # 83 at 4).

The Court finds that the first *Howe* factor favors Defendants.  To start, Poe's "disclosure" was hardly a disclosure at all.  The Sixth Circuit has held that a plaintiff's expert disclosure that included an expert's name and final conclusion was not enough to satisfy the federal rules standard because the disclosure did not provide "the substance of any of [the expert's] opinions or the bases or reasons for those opinions."  *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 669 (6th Cir. 2024).  A verbal indication that he planned to retain a rebuttal expert is not nearly enough.  Here, where Poe provided even less information, there is no doubt Defendants would be surprised by Katt's expert testimony.

The second and third factors also favor Defendants.  Poe's solution for curing the surprise is to "provide Defendants with Mr. Katt's completed written report" while being "fully amenable to affording Defendants whatever additional time they may need to review the report and, if they choose, to take Mr. Katt's deposition at a mutually convenient time." (Doc. # 81 at 4).  While courteous, this solution does not work.  This case has been pending since October, 2023.  There have been several different iterations of the Court's Scheduling Order, leading to a lengthy period of discovery.  To allow Katt's reports to come in now would effectively be to reopen the discovery window, nearly five months after its passing, which would undoubtedly extend this case's life even longer.  Extending this case means more resources expended by both Poe and Defendants.  Simply put, it would be disruptive—both to this case and to the Court's docket at large—to grant Poe's

15

request and extend the discovery period even longer and delay an ultimate resolution to this case. The Court cannot allow that to happen. *See RJ Control*, 100 F.4th at 669–70.

The fourth factor—importance of the evidence—presents a tougher determination. The Sixth Circuit has found that "[o]n its own, this factor can cut both ways. 'The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure.'" *Bisig*, 940 F.3d at 220 (quoting *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-JMH-REW, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017)). Mr. Katt's report would be unquestionably important to Poe's case, as it would provide a second expert's opinion on the case. But the expert opinion's overall importance to Poe's case is why it is inexcusable that he failed to timely disclose or file it. Accordingly, the Court finds this factor neutral.

The final factor weighs in favor of Defendants. Poe maintains that the "minor, good-faith" delay is due to his expert requiring two weeks to finalize his analysis. (Doc. # 81). The Court finds that explanation is insufficient to warrant allowance of the report. Pursuant to the Scheduling Order, Poe's expert deadline disclosures were initially due on December 1, 2025. (Doc. # 73). He did not disclose an expert witness by that date. Further, rebuttal expert disclosures were due February 12, 2026. (Doc. # 73). Although he avers he gave Defendants notice of his intent to call an expert on February 6, 2026, the disclosure was barebones and improper such that it was invalid. The record further reflects that Poe did not contact Katt to be his expert until early March 2026, within a month of the close of discovery. (*See* Doc. # 85 at 2). He then filed the Motion to Amend two days after discovery closed. (Doc. # 81). To summarize, not only did Poe not timely disclose his expert witness—he did not contact his rebuttal witness until weeks after the

16

rebuttal deadline had passed and several weeks before discovery closed.  That is not "good-faith delay."   It is neglect that the Court will not excuse by delaying these proceedings any further.

Finally, the Court will address Poe's request to include Sergeant Duncan as an expert to his case-in-chief.  (Doc. # 88 at 13).  Federal Rule of Civil Procedure 26(a)(2)(C) provides that an expert witness who is not required to provide a written report must still be disclosed.   The mandatory disclosure must state (1) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (2) a summary of the facts and opinions to which the witness is expected to testify.  FED. R. CIV. P. 26(a)(2)(C).  It is undisputed that Poe did not submit the required disclosure for Sergeant Duncan.  Accordingly, the Court will conduct a brief analysis of whether to allow Poe's requested amendment using the *Howe* factors.

The first factor—surprise—is neutral.  While Defendants admittedly know about Sergeant Duncan's conclusions and opinions, the timing of Poe's request to add him as a case-in-chief expert is suspect, to say the least.  Poe could have designated Sergeant Duncan as an expert at any point in the case and should have done so, especially given the more lenient disclosure requirements of non-retained experts.  *See Cahoo v. Fast Enters. LLC*, No. 17-10657, 2021 WL 1037727, at *3 (E.D. Mich. Mar. 18, 2021) (describing non-retained expert disclosures as "considerably less extensive" than retained expert disclosures).

Next, the Court echoes its previous findings for the second and third factors.  Even though Defendants do not need to depose Sergeant Duncan again, allowing this amendment to the disclosures would cause delay in these proceedings.  And while Poe

17

states that a cure is "trivial" because he can file a summary of Sergeant Duncan's report "immediately," he neglects the fact that his immediate filing will still need review and it will still take time for Defendants to change their defense strategy, which will take up more time and resources.  Accordingly, these factors favor Defendants.

The fourth factor favors Defendants as well.  Poe claims that Sergeant Duncan's testimony "provides the factual foundation for negligence."  (Doc. # 88 at 7).  If that is so, and Sergeant Duncan's testimony is that important to Poe's case-in-chief, there is simply no reason to have waited this long to disclose him as an expert.  As mentioned earlier, the fourth factor "cuts both ways," and the Court cannot help but wonder why it took Poe so long to solidify an admittedly important part of his case.

Finally, the fifth factor favors Defendants.  Poe has not provided a reason why he did not disclose Sergeant Duncan as an expert prior to the Court's December deadline.  The most he has said is that both parties knew about Duncan's testimony.  (Doc. # 88 at 7).  The parties' knowledge of Duncan's report and testimony does not abrogate Poe's responsibility to disclose his experts.  He had months to disclose his experts, including Sergeant Duncan, and he chose not to.

Accordingly, the Court finds that the *Howe* factors favor Defendants for both expert Katt and Sergeant Duncan.  Accordingly, Poe's Motion for Leave to File to Amend Expert Witness Disclosures (Doc. # 81) is **denied**.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED**

(1)    Plaintiff's Motion for Leave to File to Amend Expert Witness (Doc. # 81) is **DENIED**;

18

(2)    Defendants' Motion for Summary Judgment (Doc. # 86) is **GRANTED IN PART** and **DENIED IN PART**, being **granted** with respect to Plaintiff's pain and suffering claim, and **denied** with respect to Plaintiff's negligence claim and wrongful death claim;

(3)    The parties are **DIRECTED** to file a **Joint Status Report within fourteen (14) days from the date of entry of this Order** indicating whether they would be amendable to pursuing mediation, either privately or court-facilitated, as to the remaining claims.

(4)    A Final Pretrial Order will be issued separately setting forth deadlines for the filing of pretrial filings.

This 6th day of August, 2026.

Signed By:

David L. Bunning

Chief United States District Judge

G:Judge-DLB\DATA\ORDERS\Cov2023\23-142 MOO re MSJ.docx